## HOUSTON v. BROWN MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1921.)

No. 3435.

1. **Patents ⬦30(1)—Immaterial improvement not patentable.**

A patent for a purported invention, which made no useful contribution to the art and would not accomplish its purpose practically when applied in industry or was so negligible in its nature as to be wholly immaterial in results, is invalid.

2. **Patents ⬦328—853,409, claims 3 and 4, for improvements in cultivators, held not infringed.**

Houston patent, No. 853,409, claims 3 and 4, for an improvement in cultivators, if valid because the construction of the seat lever to permit vertical motion was an addition to the art, *held* not infringed by defendant's machine constructed to prevent any more vertical motion than was permitted in the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit for infringement of a patent by George D. Houston against the Brown Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

Wm. O. Belt, of Chicago, Ill., for appellant.

H. A. Toulmin, Jr., and H. A. Toulmin, both of Dayton, Ohio, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This is an action in equity to enjoin the defendant-appellee from infringing claims 2, 3, and 4 of the United States letters patent No. 853,409 and for damages.

This patent relates to improvements in riding cultivators for plowing corn. While the petition avers that defendant-appellee has infringed and is infringing claims 2, 3, and 4 of this patent, nevertheless in this court plaintiff-appellant relies only on claims 3 and 4, which read as follows:

3. "In a cultivator, the combination of a frame, a pair of gangs, a movable arch connected to said gangs, hangers supported to swing on the frame and connected to the arch, and a lever movable vertically and laterally to shift the arch and thereby move the hangers and gangs relative to the frame and in parallel relation."

4. "In a cultivator, the combination of a frame, a pair of gangs, an arch connected to said gangs, hangers supported to swing on the frame and connected to the arch, and a seat lever pivotally mounted, to swing vertically and laterally for shifting the arch to thereby move the hangers and gangs in parallel relation."

The defendant-appellee denies infringement and avers that the patent in suit is invalid by reason of the prior art and prior use; that it is also invalid for lack of utility; that it does not constitute invention, but is only a mechanical expedient and shop adaptation; that it produces

---

no new effect or results, but only effects and results well known in the art to which they relate; and that the claims are a mere aggregation of old and well-known devices.

It is not only established by the evidence, but conceded by counsel, that at the time Houston applied for and obtained his patent, there were two types of cultivators old in the art; one of these had an arch-shaped hanger, the other and newer one had straight-bar pendulum hangers. In the drawings of his patent Houston shows his invention in this admittedly old arch-shaped hanger type of cultivator. However, claims 3 and 4 of the patent in suit call for "hangers" without specifying what kind or character of hangers are to be used. It is claimed on behalf of the defendant that in view of the fact that the description of the patent in suit calls for arch-shaped hangers, that the other five claims of the patent, except perhaps claim 2, specify arch hangers, and that the drawings of the patent shows the claimed invention in the arch-hanger type of cultivator; that "hanger" as used in claims 3 and 4 must be construed to mean arch-shaped hangers only; and that as neither the "Rambler" or "Easy Shift" type of cultivators manufactured by the defendant-appellee contain such arch-shaped hangers, the defendant has not infringed.

It is claimed on the part of the plaintiff, however, that the type of cultivator used to embody his invention is of no importance whatever; that the seat lever pivotally mounted to swing vertically and laterally is the novel element of these claims. That after he had constructed 50 machines of the old arch-shaped hanger type embodying his invention, he found that they were too heavy to meet with commercial success, and thereupon built 150 machines of the straight-bar pendulum type, also embodying his invention. Some of these later machines were sold, but it is admitted that no others were ever constructed or sold by Houston; that he did not enter the manufacturing business himself, and has been unable to interest or induce any agricultural implement manufacturing company to manufacture his machine upon royalty or otherwise.

There would seem to be purpose in the use in claims 3 and 4 of the word "hangers" broadly, without any limitation or specification, as in the other claims of the patent, but the evidence of Mr. Houston and description of his later patent of 1910 would indicate that Houston did not intend or understand that the term "hangers" as used in the third and fourth claims of his patent should be interpreted as meaning anything other than arch-shaped hangers, which he at that time seemed to consider essential to the proper functioning of his improvement.

It is apparent from the evidence relating to the prior patent art, and prior public use, that the plaintiff's claimed invention is in a crowded, if not an overcrowded, art. It is admitted by counsel for plaintiff that laterally swinging seat levers connected at the front to the sides of the arch, to which the gangs are attached, and which holds them in parallel relation in their forward ends, were old in the art, but it is insisted that Houston was the first to connect the front end of the seat lever to the top of the arch, and so mount or pivot this lever on the frame of the machine, and so associate it with other structural elements old

in the art, as to permit it to swing vertically as well as laterally. It is clear from the evidence that this is the only novelty, if any, of plaintiff's invention.

The defendant denies that this is novel in the art, and in support of this contention has introduced in evidence a number of prior patents, particularly Lacey, No. 48,627, issued as early as 1865; Sandelin, No. 125,087, issued in 1872; Children, No. 434,765, issued 1890; Scott, No. 578,585, issued 1897; Young, No. 598,461, issued 1898; Avery, No. 611,551, issued 1898; W. L. and W. A. Paul, No. 836,779, issued 1906, for which application was filed in April, 1905. This Paul patent covers the machines commercially known as "Little Jap" and "Tu-Ro," manufactured by the Bradley Manufacturing Company, and later taken over by Sears, Roebuck & Company, who are still manufacturing and selling the same. These are the machines largely relied upon by defendant to show prior use.

It appears from the expert testimony in this record that the Lacey patent, No. 48,627, contains the essential features found in the Houston patent; that "it shows all the essential things of the Houston machine"; that the language used in the description of the Lacey patent differs from the language used in the Houston patent, but means exactly the same thing; and that in all riding cultivators the strength of the body, as well as the legs, is applied in the operation of the gangs.

It also appears from this testimony that the essential elements of the Houston patent are found in Sandelin, No. 125,087, except the lever for controlling the gangs and moving them laterally is not a seat lever, but it is a lever operated from the seat; that in Children, No. 434,765, all of the elements of the Houston machine appear, with the exception that the seat is not located on the operating lever; that the Scott patent, 578,585, contains the arch-shaped hanger, but does not have the seat as in the Houston machine; that in the specification in the Scott patent a reference is made to the fact that a seat may be used in connection with this machine, but does not state that such seat lever may be used in operating the gangs, but that this patent does show substantially, in one form, the same means for controlling the gangs as in the Houston machine; that in Paul, 836,779, is found all the elements in the Lacey patent, but in a higher form, consisting in the pivotal seat movement and the arch connecting the front end of the gangs and holding them in parallel relation, but without the arch-shaped hanger as in the Houston machine, and that nothing is found in Houston new to the art; that while there would necessarily be some vertical movement at the end of the seat lever in the normal operation of any machine constructed under the specifications of either of the prior patents, without any expressed purpose or without any specific arrangements for accommodating that incidental and immaterial detail of the construction, that there is nothing in the patent art, in regard to that feature, except in Houston; that it is not found in the defendant's machine; and that the Houston machine is the only machine in which special provision has been made for that function.

It also appears from the evidence that this vertical movement incident to the swinging movement in the arc of a circle, in changing the

position of the gangs, was not regarded as important in the prior art; that Houston was the first to recognize its importance, if it is important, and to so pivot the seat lever to the frame of the machine to accommodate this motion.

[1] Of course, if, as claimed, this purported invention added nothing to the knowledge of the cultivator art, and would not accomplish its purpose practically when applied in industry, or was so negligible in its nature as to be wholly immaterial in results, then it is necessarily invalid. Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263; Besser v. Merrilat, 243 Fed. 611, 612, 156 C. C. A. 309 (C. C. A. 8); Scott v. Fisher Knitting Mach. Co. (C. C.) 139 Fed. 137–146; Carter Mach. Co. v. Hanes et al. (C. C.) 70 Fed. 859.

It is wholly unnecessary, however, in the disposition of this case, for this court to determine whether claims 3 and 4 of this patent in suit should receive the broad and liberal construction which, standing alone, they would be entitled to receive, nor is it important or necessary to determine whether the structure of the patent embodied either in the arch-shaped hanger type, or the straight-bar pendulum type of cultivator failed for lack of utility.

[2] If it were conceded that Houston's method of pivoting the seat lever to the frame in such manner as to secure the largest possible vertical movement was an advance over the prior art and of substantial utility, nevertheless it is perfectly apparent from the evidence in this case, and particularly from a careful examination of defendant's machines, that are claimed to be an infringement of plaintiff's patent, that they contain no such feature of construction as would permit of sufficient vertical movement to be of any advantage whatever in the practical operation of the same. On the contrary, in this particular they are substantially in line with the prior art and therefore do not infringe in any particular.

It is the claim of the defendant that the plaintiff's theory is a fanciful one of gravity, not justified by the facts and self-contradictory, for the reason that even if it were conceded that the weight of the operator shifts the gangs as the weight travels down in the curve of the arc, which the rear end of the seat lever describes, that when the operator gets to the extreme swing of the lever, at its lowest point, he must exert muscular force to get back to his original position, so that any helpfulness in one instance is at least counterbalanced by its hurtfulness in another.

The defendant's sincerity in reference to its own theory as to the nonutility of the vertical movement is demonstrated by the fact that in neither of the machines said to infringe, and which are exactly alike, except one has the pivoted wheels and the other has not, is the seat lever connected to the frame by the arrangement or device shown in Fig. 4 of the patent in suit, in which appears the washer "18" with the rounded lower face to permit an easy swinging movement of the seat lever. On the contrary, an attempt has been made to prevent, so far as possible, any vertical movement of the seat lever ends, by making a broad bearing so firmly connecting the seat lever to the frame that it is necessary to have ball-bearings to relieve the friction.

The machine manufactured by the plaintiff was not introduced in evidence, and for that reason the court is wholly unable to say to what extent a vertical motion may be permitted by his specific device for attaching the 'seat lever to the frame, as shown in Fig. 4 of his patent, but if it is as negligible a movement as that found in the defendant's machine, then it is not only not an advance over the prior art, but is necessarily void for lack of utility.

However, without deciding and without expressing any opinion whatever in reference to the validity of the patent in suit, this court is of the opinion, for the reasons above stated, that the defendant is not infringing claims 3 and 4 of the Houston patent, and the judgment of the District Court is affirmed.